

FILED

Jun 14 2023, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Courtney David Mills
Alexis R. Jenkins
Riley Bennett Egloff, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Timothy S. Schafer
Timothy S. Schafer, II
Todd S. Schafer
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Incremedical, LLC and Annie Gonzalez, <br> *Appellants-Defendants,* <br><br> v. <br><br> Alyssa Kennedy, <br> *Appellee-Plaintiff.* | June 14, 2023 <br><br> Court of Appeals Case No. 22A-CT-2929 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Jeffrey Clymer, Judge <br><br> Trial Court Cause No. 64D02-2108-CT-7130 |

**Opinion by Judge Riley**
Judges Bradford and Weissmann concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellants-Defendants, IncreMedical, LLC (IncreMedical) and Annie Gonzalez (Gonzalez) (collectively, Appellants), appeal the trial court's denial of their motion to dismiss Appellee-Plaintiff, Alyssa Kennedy's (Kennedy), Complaint for lack of subject matter jurisdiction.

We reverse and dismiss.

## ISSUE

Appellants present this court with one issue on appeal, which we restate as: Whether the trial court erred by denying Appellants' motion to dismiss because Appellants are qualified health care providers pursuant to the Medical Malpractice Act and Kennedy failed to present her proposed complaint to the medical review panel prior to commencing this cause.

## FACTS AND PROCEDURAL HISTORY

IncreMedical is a rehabilitation management company that employs approximately 380 individuals and provides a wide variety of resources and personnel in the field of rehabilitation medicine. IncreMedical provides staffing and management of rehabilitation facilities in northern Indiana and surrounding communities. As part of its business services, IncreMedical employs a wide array of health care professionals, including physical therapists and occupational therapists. At all times during these events, Gonzalez was an employee of IncreMedical and acted in the course and scope of her employment with IncreMedical.

[5]     On August 22, 2019, Kennedy, then a high school student, was playing volleyball at Portage High School. During the game, both Kennedy and a teammate went for a ball and collided. Kennedy was knocked to the ground and her head struck the floor. Kennedy was referred to Athletic Trainer (AT) Gonzalez, working as an IncreMedical employee and contracted to work at Portage High School. AT Gonzalez advised Kennedy's mother that "there is no use in going to the hospital" because a concussion is not visible on a scan. (Appellants' App. Vol. II, p. 8). The following day, Kennedy informed AT Gonzalez that she had a terrible headache. Without doing an impact test as required by Portage High School's safety policies and procedures, AT Gonzalez cleared Kennedy for practice. Three days later, Kennedy participated at another volleyball game at Portage High School. During the game, Kennedy was struck in the head by a ball. She was clearly dazed and confused. Again, AT Gonzalez advised Kennedy's mother "that there was no use in going to the ER because there isn't anything they can do to treat a concussion." (Appellants' App. Vol. II, p. 20).

[6]     On August 4, 2021, Kennedy filed her Complaint against Portage High School and Portage Township Schools (collectively, Portage High School)[1], claiming to have sustained a brain injury due to Portage High School's and its employees' negligence in failing to follow its safety rules and procedures. On September 30, 2021, Portage High School filed its answer, naming AT Gonzalez and

---

[1] Portage High School is not part of these appellate proceedings.

IncreMedical as non-parties. On January 3, 2022, Kennedy amended her Complaint, adding AT Gonzalez and IncreMedical as defendants and alleging that AT Gonzalez "failed to recognize [Kennedy's] brain injury" and "failed to perform proper tests regarding concussions and brain injuries." (Appellants' App. Vol. II, p. 20).

[7] On April 6, 2022, Appellants filed their motion to dismiss Kennedy's Complaint, alleging the trial court lacked subject matter jurisdiction over Kennedy's claims pursuant to Indiana Code section 34-18-8-4 because Kennedy had failed to submit a proposed complaint naming Appellants to a medical review panel. Together with their motion to dismiss, Appellants provided an affidavit from the Indiana Department of Insurance (IDOI) verifying that IncreMedical was a qualified health care provider pursuant to Indiana's Medical Malpractice Act (MMA) and an affidavit by Ann Miller (Miller), IncreMedical's Human Resource Manager, averring that AT Gonzalez was an employee of IncreMedical acting within the course and scope of her employment. On April 13, 2022, Kennedy filed her response. On April 15, 2022, Appellants filed a reply, including a supplemental affidavit from IDOI, verifying that both IncreMedical and AT Gonzalez "were qualified health care providers under the [MMA] for the time periods identified in [Kennedy's] Complaint." (Appellants' App. Vol. II, p. 69). The affidavit also averred that Kennedy "did not file a Proposed Complaint for Damages with the IDOI regarding the claims set forth in [Kennedy's] Complaint." (Appellants' App.

Vol. II, p. 69).  On June 7, 2022, the trial court heard argument on Appellants'
motion and subsequently denied Appellants' motion to dismiss.

[8]     Appellants now appeal.  Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

I. *Standard of Review*

[9]     A trial court's ruling on a motion to dismiss for lack of subject matter
jurisdiction under Trial Rule 12(B)(1), unlike a trial court's ruling on a motion
to dismiss under Trial Rule 12(B)(6), may consider not only the complaint, but
also any affidavits or other evidence presented and submitted on the issue of
subject matter jurisdiction.  *B.R. ex rel. Todd v. State*, 1 N.E.3d 708, 712 (Ind. Ct.
App. 2013), *trans. denied*.  If such evidence is presented, the trial court may
weigh the evidence to resolve the jurisdictional issue.  *Id.*  On appeal, our
standard of review depends on what occurred in the trial court, that is, whether
the trial court resolved disputed facts, and if the trial court resolved disputed
facts, whether it conducted an evidentiary hearing or ruled on a "paper record."
*Martinez v. Oaklawn Psychiatric Ctr., Inc.*, 128 N.E.3d 549, 554-55 (Ind. Ct. App.
2019), *decision clarified on reh'g,* 131 N.E.3d 777 (Ind. Ct. App. 2019).

> If the facts before the trial court are not in dispute, then the
> question of subject matter jurisdiction is purely one of law.
> Under those circumstances no deference is afforded to the trial
> court's conclusion because appellate courts independently, and
> without the slightest deference to trial court determinations,
> evaluate those issues they deem to be questions of law.  Thus, we
> review *de novo* a trial court's ruling on a motion to dismiss under

Trial Rule 12(B)(1) where the facts before the trial court are undisputed.

If the facts before the trial court are in dispute, then our standard of review focuses on whether the trial court conducted an evidentiary hearing. Under those circumstances, the court typically engages in its classic fact-finding function, often evaluating the character and credibility of witnesses. Thus, where a trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. And in reviewing the trial court's factual findings and judgment, we will reverse only if they are clearly erroneous. Factual findings are clearly erroneous if the evidence does not support them, and a judgment is clearly erroneous if it is unsupported by the factual findings or conclusions of law.

However, where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded to the trial court's factual findings or judgment because under those circumstances a court of review is in as good a position as the trial court to determine whether the court has subject matter jurisdiction. Thus, we review *de novo* a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

*GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001) (citations and internal quotations omitted). In this case, the trial court considered the affidavits presented by Appellants.

[10] The facts set forth above are undisputed. Moreover, although the trial court held a hearing on the motion to dismiss, the hearing was simply an oral argument, as the parties presented no additional evidence, and no witnesses

were sworn. Accordingly, we apply a *de novo* standard of review based on the paper record before us. *See B.R. ex rel. Todd*, 1 N.E.3d at 713 (applying a *de novo* standard where the trial court held a hearing at which the parties made legal arguments but did not present evidence).

II. *Health Care Providers under the MMA*

[11] The MMA governs medical malpractice claims against healthcare providers. *Ball Mem'l Hosp., Inc. v. Fair*, 26 N.E.3d 674, 679 (Ind. Ct. App. 2015), *trans. denied*. To fall within the purview of the MMA, a provider's conduct must be undertaken in the interest of, or for the benefit of, the patient's health. In other words, the conduct must be "curative or salutary in nature or effect" for the person claiming patient status under the MMA. *Collins v. Thakkar,* 552 N.E.2d 507, 510 (Ind. Ct. App. 1990). The curative or salutary conduct must be directed toward the person to whom the provider owes a duty of care. *See Peters v. Cummins Mental Health, Inc.,* 790 N.E.2d 572, 577 (Ind. Ct. App. 2003), *trans. denied*. Conversely, the MMA does not apply to conduct "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011).

[12] While the parties do not contest the propriety of Appellants' conduct as falling within the parameters of the MMA, Appellants contend that because they are qualified health care providers, as statutorily defined, Kennedy should have

submitted her proposed complaint to a medical review panel prior to commencing an action before the trial court.

[13] Generally, a medical malpractice action may not be brought against a health care provider until a proposed complaint has been filed with the IDOI and an opinion has been issued by a medical review panel. *Williams v. Adelsperger*, 918 N.E.2d 440, 445 (Ind. Ct. App. 2009), *trans. denied*. However, a plaintiff may bring a medical malpractice claim against a health care provider—without first filing a proposed complaint with the IDOI—if the health care provider against whom the action is brought is not qualified under the MMA. *Rumell v. Osolo Emergency Med. Servs., Inc.*, 88 N.E.3d 1111, 1114 (Ind. Ct. App. 2017), *trans. denied*.

[14] In deciding the proper forum, our supreme court has explained that the IDOI is the appropriate entity to make the "determination" of whether a health care provider is qualified under the MMA. *Guinn v. Light*, 558 N.E.2d 821, 824 (Ind. 1990). For this reason, the court has noted that it is "prudent for [the plaintiff] to commence [a medical malpractice] action by filing [a] proposed complaint with the [IDOI]." *Miller v. Terre Haute Reg'l Hosp.*, 603 N.E.2d 861, 863 (Ind. 1992). This is so regardless of the ultimate qualified status of the defendant health care provider. *Id*. Moreover, in *Shenefield v. Barrette*, 716 N.E.2d 1, 4-5 (Ind. Ct. App. 1999), this court indicated that when conflicting information is provided to the claimant concerning the qualified status of a physician under the Act, there is an affirmative obligation on the part of the claimant to determine from the IDOI whether the doctor is qualified.

Here, Appellants submitted an affidavit by Mary Wilson (Wilson), the Director of Dedicated Funds of the Indiana Patient's Compensation Fund, Medical Malpractice Division. As part of her duties, as Director of Dedicated Funds, Wilson is "responsible for maintaining the records of all individuals and entities who have applied for and are qualified health care providers under the Indiana Medical Malpractice Act, I.C. § 34-18-1-1 *et seq.*" (Appellants' App. Vol. II, p. 68). She affirmed to have "reviewed the IDOI's records and related documents regarding [IncreMedical] and [AT Gonzalez's] status as qualified health care providers under the Act." (Appellants' App. Vol. II, p. 68). In her affidavit, Wilson concluded that "[IncreMedical] and their employee, [AT Gonzalez][,] were qualified health care providers under the Act for the time periods identified in [Kennedy's] Complaint." (Appellants' App. Vol. II, p. 69).

Even without Wilson's affidavit, we would reach the same conclusion that IncreMedical and AT Gonzalez are health care providers, as defined within the province of the MMA. Pursuant to the MMA, a "health care provider" is defined as:

> An individual, a partnership, a limited liability company, a corporation, a professional corporation, a facility, or an institution licensed or legally authorized by this state to provide health care or professional services as a physician, psychiatric hospital, health facility, emergency ambulance service ([I.C. §] 16-18-2-107), dentist, registered or licensed practical nurse, physician assistant, certified nurse midwife, anesthesiologist assistant, optometrist, podiatrist, chiropractor, physical therapist, respiratory care practitioner, occupational therapist, psychologist, paramedic, advanced emergency medical technician, or

emergency medical technician, or a person who is an officer, employee, or agent of the individual, partnership, corporation, professional corporation, facility, or institution acting in the course and scope of the person's employment.

Ind. Code § 34-18-2-14(1)(a). Not contesting the status of IncreMedical as a health care provider under the MMA, Kennedy focuses her argument on AT Gonzalez, claiming that because athletic trainers are not specifically listed in the statute, AT Gonzalez is not a health care provider and, therefore, not subject to the confines of the MMA. In support of her argument, Kennedy refers this court to *Kroger Company v. Estate of Hinders*, 773 N.E.2d 303 (Ind. Ct. App. 2002), *trans. denied*.

[17] In *Kroger*, the *Kroger* court observed, with respect to the grocery store pharmacy which was determined to be an unqualified health care provider under the MMA:

> The language of Indiana Code section 34-18-2-14 within the Medical Malpractice Act has been revised several times since its enactment in 1975. The following ten health care providers have been added to the definition since 1975: psychiatric hospital, health facility, emergency ambulance service, physician assistant, midwife, respiratory care practitioner, occupational therapist, paramedic, emergency medical technician, and advanced emergency medical technician. At no point have pharmacists and pharmacies been added to this carefully considered and exclusive list of health care providers afforded the protections of the Medical Malpractice Act by the General Assembly.

*Id.* at 306. Analogizing to the *Kroger* court's determination, Kennedy maintains that because athletic trainers have not "been added to this carefully considered and exclusive list of health care providers," the MMA clearly does not protect AT Gonzalez. (Appellee's Br. p. 9).

[18] Even though *Kroger* was decided within the context of statute of limitation provisions and represented dicta with respect to its interpretation of statutorily defined health care providers, we find *Kroger* to be unavailing to the situation before us for another reason. Unlike the enumerated and exclusive list which the *Kroger* court relied on to exclude pharmacists from the application of the MMA, Appellants posit the argument—and we agree—that AT Gonzalez is protected under the MMA pursuant to the catch-all provision included in Indiana Code section 34-18-2-14. Specifically, the MMA is applicable to AT Gonzalez by virtue of being "a person who is an [] employee [] of the [] professional corporation, facility, or institution [and who was] acting in the course and scope of the person's employment." *See* I.C. § 34-18-2-14. In their affidavits, Wilson confirmed that IncreMedical and AT Gonzalez were qualified health care providers under the MMA, and Miller averred AT Gonzalez was an employee of IncreMedical and was acting within the course and scope of her employment at the time of the incident.

[19] Accordingly, as IncreMedical and AT Gonzalez are qualified health care providers under the MMA, Kennedy must present her proposed complaint to a medical review panel prior to commencing an action in the trial court. I.C. § 34-18-8-4. Kennedy failed to do so. Because the trial court lacked subject

matter jurisdiction, we reverse the trial court's denial of Appellants' motion to dismiss.[2]

## CONCLUSION

Based on the foregoing, we hold that the trial court erred by denying Appellants' motion to dismiss because IncreMedical and AT Gonzalez are qualified health care providers pursuant to the MMA and Kennedy failed to present her proposed complaint to the medical review panel prior to commencing this cause before the trial court.

Reversed and dismissed.

Bradford, J. and Weissmann, J. concur

---

[2] Kennedy also claims that AT Gonzalez was not covered by the MMA pursuant to Indiana Code section 34-18-3-3. Kennedy failed to raise this argument before the trial court, therefore, we find the issue waived. *Nance v. Miami Sand & Gravel, LLC,* 825 N.E.2d 826, 834 (Ind. Ct. App. 2005), *trans. denied* ("A party generally waives appellate review of an issue or argument unless that party presented that issue or argument before the trial court.").